IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| ANTHONY BAILEY, | ) CASE NO. 1:19-CV-02409-BYP |
| | ) |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| | ) |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) JENNIFER DOWDELL ARMSTRONG |
| WARDEN RONALD ERDOS, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I.    INTRODUCTION

Petitioner Anthony Bailey[1] ("Bailey") seeks a Writ of Habeas Corpus under 28 U.S.C. § 2254.

(ECF Doc. 3). Bailey, an Ohio inmate,[2] is currently serving a prison sentence for receiving stolen

property, burglary, theft, and having weapons while under disability. Respondent, Warden Ronald

---

[1] Petitioner refers to himself as Gerald A. West in his Petition and some state court filings. Yet Petitioner was referred to as Anthony Bailey throughout most of the state proceedings. And the ODRC still lists Petitioner as Anthony Bailey in its Offender Search. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A332116 (last visited Nov. 30, 2022). Accordingly, in the interest of consistency, I will continue to use the name Anthony Bailey. Nevertheless, to the extent petitioner's new name is Gerald A. West, this Report and Recommendation regards Gerald A. West and Anthony Bailey as the same individual.

[2] According to the ODRC website, Bailey is now incarcerated at Mansfield Correctional Institution. *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A332116 (last visited Nov. 30, 2022). Bailey has failed to provide the court with his current address. It is the party, not the court, who bears the burden of apprising the court of any changes to his mailing address. *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) (affirming district court's denial of Rule 60(b) motion when movants claimed, due to house fire, that they did not receive mail informing them of court's entry of summary judgment); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("[A] litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit."); *Watsy v. Richards*, No. 86-1856, 1987 WL 37151, at *1 (6th Cir. April 20, 1987) (affirming dismissal for failure to prosecute when appellant failed to provide district court with "current address necessary to enable communication with him").

1

Erdos ("Respondent"),[3] filed a Return of Writ. (ECF Doc. 12). Bailey filed a Traverse. (ECF Doc. 13). The matter is before me[4] by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Bailey's petition and other case-dispositive motions. For the reasons set forth below, I RECOMMEND that the Court DENY and/or DISMISS Bailey's Petition. I also RECOMMEND that Tim McConahay, the Warden of the Mansfield Correctional Institution—where Bailey is currently housed—should be substituted for Ronald Erdos as the Respondent in this case.

## II. RELEVANT STATE PROCEDURAL HISTORY

### A. State Criminal Conviction

In 1985, Bailey pled guilty to an amended indictment and was convicted of one count of burglary, in violation of R.C. § 2911.12, and one count of theft, in violation of R.C. § 2913.02, in the Cuyahoga County Court of Common Pleas. (ECF Doc. 12-1, Ex. 1, PageID#80). As part of the plea bargain, Bailey also pled guilty to one count of receiving stolen property, in violation of R.C. § 2913.51, in the Cuyahoga County Court of Common Pleas, Case No. CR-85-202704. (*Id.* at 82). On November 21, 1985, the trial court sentenced Bailey to a one-year term of imprisonment on the theft conviction, a three to 15-year term of imprisonment on the burglary conviction, and a one-year term of imprisonment for the receiving stolen property conviction. (*Id.*). The court ordered these sentences to be served concurrently. (*Id.* at 83).

---

[3] Ronald Erdos was warden of Southern Ohio Correctional Facility when Bailey filed his petition. Tim McConahay is the warden of Mansfield Correctional Institution, where Bailey is currently confined. *See* https://drc.ohio.gov/manci (last visited Nov. 30, 2022). Tim McConahay should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

[4] This matter was originally before Magistrate Judge William H. Baughman, Jr. pursuant to an automatic order of reference. Due to Magistrate Judge Baughman's retirement, this case was referred to the undersigned pursuant to General Order 2022-14 on September 2, 2022.

On August 11, 1989, Bailey was released on parole. (*Id.*, Ex. 2, PageID#84). The maximum expiration of his sentence was September 16, 2000. (*Id.*). However, Bailey committed additional crimes while on parole. After a jury trial, Bailey was convicted on one count of receiving stolen property, in violation of R.C. § 2913.51, and one count of having weapons while under disability, in violation of R.C. § 2923.13, each with firearm specifications, in the Cuyahoga County Court of Common Pleas, Case No. CR-89-244462. (*Id.*, Ex. 3, PageID#86). On April 30, 1990, the trial court sentenced Bailey to a two to 10-year term of imprisonment on the receiving stolen property offense, to be served consecutive to a two to five-year term of imprisonment for having weapons while under disability. (*Id.*). Bailey's aggregate sentence was four to 15 years imprisonment, plus an additional three years imprisonment for the firearm specification. (*See id*). The Eighth District Court of Appeals affirmed Bailey's conviction on direct review. *State v. West*, No. 59936, 1992 Ohio App. LEXIS 1219 (Mar. 19, 1992).

On September 1, 1995, Bailey was released on parole. (*Id.*, Ex. 2, PageID#84). The 15-year maximum sentence, along with the three-year consecutive firearm specification from his 1990 charges in Case No. CR-89-244462, were added to Bailey's previous maximum sentence expiration date, resulting in a new maximum sentence expiration date of September 12, 2018. (*Id.*). On September 3, 1996, Bailey was declared a parole violator at large. (*Id.*). After Bailey's arrest on October 5, 1996, the Adult Parole Authority ("APA") added 32 days of lost time, resulting in a maximum sentence expiration date of October 14, 2018. (*Id.*).

Subsequently, Bailey pled guilty to and was convicted for one count of receiving stolen property, in violation of R.C. § 2913.51, in the Cuyahoga County Court of Common Pleas, Case No. CR-96-341621. On December 9, 1996, the trial court sentenced Bailey to a one-year term of imprisonment. (*Id.*, Ex. 4, PageID#87). Pursuant to then-existing R.C. § 2929.141(B), this sentence

3

was to run consecutive to Bailey's previous sentences, resulting in a new maximum sentence expiration date of June 27, 2019. (*Id.*, Ex. 2, PageID#85).

### B.  Federal Criminal Conviction

On May 19, 2003, Bailey was released on parole. (*Id.*, Ex. 5, PageID#89). Less than three months later, he was arrested by the Macedonia Police Department for armed bank robbery on August 1, 2003. (*Id.*, Ex. 2, PageID#85). While awaiting sentencing on the armed bank robbery charge, Bailey was housed in the Ashtabula County Jail and attempted to escape. (ECF Doc. 12-1, Ex. 10, PageID#102). Bailey was charged with one count of escape in the Northern District of Ohio in Case No. 04-CR-057. Subsequently, Bailey was convicted of one count of armed bank robbery in the Northern District of Ohio and sentenced to a 146-month term of imprisonment in the United States Bureau of Prisons, BOP. (*Id.*at 90). Additionally, Bailey was sentenced to 51 months in federal prison for escape, which was to run concurrent with his 146-month sentence for armed bank robbery.

### C.  Parole Revocation

At the conclusion of his federal sentence, the BOP returned Bailey to state custody on August 5, 2015. (*Id.*, Ex. 7, PageID#95). The APA classified his parole status to a parole violator in custody. (*Id.*). On August 12, 2015, Bailey was provided and signed the notification of his parole revocation hearing, in which he was informed of the conditions of supervision he violated and apprised of his rights regarding his revocation hearing. (*Id.*, Ex. 8, PageID#96). Significantly, Bailey admitted to violating Rule 1 of his conditions of release. (*See id.* at 97). He also signed the form acknowledging that he received the notice of the revocation hearing. (*Id.* at 98). Due to the unavailability of the parole office, his originally scheduled hearing for September 1, 2015, was continued for two weeks. (*Id.*, Ex. 9, PageID#99).

On September 16, 2015, the Parole Board held a revocation hearing, and Bailey was represented by counsel. (*Id.*, Ex. 10, PageID#101). The Parole Board determined that Bailey had admitted to violating Rule 1 of his conditions of release and dismissed the other violations. (*Id.*). The Hearing Officer recommended that Bailey be ordered to serve 48 months for his parole violations before becoming eligible for consideration to be released on parole, and the Parole Board issued a Revocation Order summarizing the evidentiary findings and the rationale for revoking Bailey's parole. (*Id.*, Ex. 11, PageID#103). Bailey refused to sign his copy of the Sanction Receipt notifying him of his parole revocation. (*Id.*, Ex. 12, PageID#104). However, on September 25, 2015, he did sign a copy of the Sanction Receipt. (*Id.*, Ex. 13, PageID#105). Bailey received 4,386 days of lost time by the APA, resulting in a new maximum expiration of sentence of June 30, 2031. (*Id.*, Ex. 2, PageID#85).

### D.  State Habeas Corpus Petitions

#### 1. First Petition

On September 19, 2018, Bailey, *pro se*, filed a petition for writ of habeas corpus in the Madison County Court of Common Pleas. He alleged that his due process rights were violated because he was never declared a parole violator, and he was not afforded a parole revocation hearing. (ECF Doc. 12-1, Ex. 14, PageID#109-13). Bailey also challenged his sentence computation. (*Id.* at 113). Respondent filed a motion for summary judgment. (*Id.*, Ex. 15, PageID#125-35). Bailey filed a reply brief. (*Id.*, Ex. 16, PageID#139-55). On January 28, 2019, the court granted Respondent's motion for summary judgment, finding that Bailey failed to comply with the requirements of R.C. § 2725.04(D) and 2969.25(C). (*Id.*, Ex. 17, PageID#156). Bailey did not appeal to the Ohio Court of Appeals.

### 2. Second Petition

On June 7, 2019, Bailey, *pro se*, instead filed another state habeas petition in the Ohio Supreme Court. He again raised the same claims challenging his maximum aggregated sentence that he made in his first habeas petition before the Madison County Court of Common Pleas, *i.e.,* that he never violated the conditions of his parole supervision, he was never declared a parole violator, and he was never afforded a hearing to determine whether he violated his parole conditions. (*Id.*, Ex. 18, PageID#157-59). On August 21, 2019, the Ohio Supreme Court *sua sponte* dismissed his petition as meritless. (*Id.*, Ex. 19, PageID#170).

## III.    FEDERAL HABEAS CORPUS PETITION

On September 23, 2019, Bailey, *pro se*, executed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 3). In his Petition, Bailey asserts the following grounds for relief:[5]

**GROUND ONE:** Sentence computation R.C. 2929.41 was improperly applied by the Ohio Adult Parole Authority

**Supporting Facts:** Petitioner 1985 burglary was suppose to run concurrent with the 1990 weapon under disability, not consecutive. The 1995 passage of Am. Sub. S.B. No. 2, deleted R.C. 2929.41(B)(3) effective July 1, 1996, 146 Ohio Laws, Part IV, 7136, 7502. House Bill was effective 11/1/87 through 7/1/96.

**GROUND TWO:** Parole violation hearing, Due process

**Supporting Facts:** May 19, 2003 after his release, Petitioner (Gerald A. West) never violated his condition of his release or condition of supervision because he never signed any document stating any agreement. West's states that after his arrest in August 2003, he was never declared a parole violator, nor was he afforded a preliminary hearing to determine whether there was probable cause to believe that he violated his parole.

**GROUND THREE:** Revocation hearing, due process

**Supporting Facts:** Petitioner (Gerald A. West) stayed in a state holding facility for more than a year, with no attempts to return him to the proper institution and there was no warrant issued.

---

[5] Bailey's grounds for habeas relief asserted in his Petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

(ECF Doc. 3, PageID#22-25). Respondent filed the Return of Writ on April 29, 2020. (ECF Doc. 12). Bailey, *pro se*, filed his Traverse on June 12, 2020. (ECF Doc. 13).

## IV.  LEGAL STANDARDS

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced Bailey, and the Court takes judicial notice that Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over petitioner's § 2254 petition.

### B.  AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Bailey's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to

a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on

8

a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under de novo review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and

9

does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, *quoting Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### C.  Cognizable Federal Claim

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Federal habeas corpus relief "does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen*, 845 F.2d at 614 (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### V.      ANALYSIS

#### A.  Statute of Limitations

##### 1. *Expiration and Statutory Tolling*

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of the following four scenarios:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

Here, Petitioner's claim revolves around his 2015 parole revocation, the calculation of his maximum aggregated sentence after serving his federal sentence, and his return to the custody of the State of Ohio to serve prison time for his parole revocation. (*See* ECF Doc. 3, PageID#22-25; ECF Doc. 13, PageID#191-99). Applying § 2244(d)(1)(D), Respondent asserts that the date on

which the factual predicate of the claims presented could have been discovered through the exercise of due diligence was September 6, 2015, the date of Bailey's parole revocation. (ECF Doc. 12, PageID#64). This assertion is well-taken. The statute of limitations clock began running on September 17, 2015, the next business day after Bailey's parole revocation. *See* Fed. R. Civ. P. 6(a). The statute expired one year later on September 17, 2016, absent the application of any statutory or equitable tolling principles.

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). *See Evans v. Chavis*, 546 U.S. 189, 191 (2006). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007). Once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

Statutory tolling would not make Bailey's petition timely. Bailey did not file any post-conviction petition between September 17, 2015 and September 17, 2016. The record does not reflect—and Bailey does not maintain in either his Petition or Traverse—that he did so. To the extent that Bailey could argue that his state habeas petitions tolled the statute of limitations, such

a claim should be rejected. Although a properly filed application for state post-conviction relief or other collateral relief tolls the running of the limitations period, it does not revive the limitations period. *See Vroman*, 346 F.3d at 602.

Here, Bailey filed his first state habeas petitions entirely outside the statute of limitations period. Specifically, this petition was filed in the Madison County Court of Common Pleas on September 19, 2018, over three years after September 17, 2015. (ECF Doc. 12-1, PageID#106-24). In that petition, Bailey challenged his maximum aggregate sentence by claiming that he never violated the conditions of his parole supervision, he was never declared a parole violator, and he was never afforded a hearing to determine whether he violated his parole conditions. (*Id.* at 157-69). The trial court found that Bailey failed to comply with the requirements of R.C. § 2725.04(D) and § 2969.25(C) and granted Respondent's motion for summary judgment. (*Id.* at 156). Bailey did not seek direct appellate review of this decision. Rather than appealing to the Ohio Court of Appeals, Bailey instead filed a second state habeas petition in the Ohio Supreme Court on June 17, 2019, asserting the same claims he advanced in his habeas petition in the Madison County Court of Common Pleas. On August 21, 2019, the Ohio Supreme Court *sua sponte* dismissed his petition. (*Id.* at 170). Because Bailey has not demonstrated that he filed any post-conviction relief or other collateral relief within the statute of limitations period, statutory tolling does not serve to extend the limitations period. *Vroman*, 346 F.3d at 602.

## 2. *Equitable Tolling*

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that he: (1) pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented

13

timely filing. *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 735 (6th Cir. 2011); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012). There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

For the same reasons discussed above, Bailey has failed to show diligence. Further, he has alleged no "extraordinary circumstance" that prevented him from timely filing. Moreover, Bailey has not presented any claim - much less any evidence - of "actual innocence" to excuse the statute of limitations bar. Indeed, Bailey has wholly failed to address the statute of limitations issue in either his Petition or Traverse. (*See generally* ECF Doc. 13, PageID#191-99). Rather, he attempts to expand and recast the habeas claims that he did not elaborate in his Petition. (*See id.*). Thus, he is not entitled to equitable tolling. *See Holland*, 560 U.S. at 649. Accordingly, I recommend that the Court dismiss Bailey's claims as time-barred.

### B. Ground One

#### 1. *Failure to Exhaust Available Remedies*

Alternatively, Bailey's Ground One claim should be dismissed for failure to exhaust available remedies. An application for a writ of habeas corpus pursuant to § 2254 shall not be granted unless a petitioner has exhausted his state court remedies; there is an absence of an available state corrective process; or circumstances exist that render such process ineffective to protect a petitioner's rights. 28 U.S.C. § 2254(b)(1). To properly exhaust available remedies, each claim must have been "fairly presented" to the state courts. *See, e.g.*, *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir.2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir.2003). Fair presentation requires that the state courts be given the opportunity to see both the legal and factual basis for

each claim. *Wagner*, 581 F.3d at 414. To do so, a petitioner must provide state courts with "one full opportunity to resolve any constitutional issues by invoking *one complete round* of the State's established review appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added).

With respect to Bailey's Ground One claim, he has failed to properly exhaust his administrative remedies. Bailey's assertion that the Ohio Department of Rehabilitation and Corrections ("ODRC") miscalculated his sentence's expiration data must be resolved first through the inmate grievance process followed by a mandamus question. *See State ex rel. Salyers v. Tanner*, 2003-Ohio-4182, ¶ 2. Bailey contends that he cannot exhaust administrative remedies because "prison official[s] using Ohio Admin Code 5120-9-31 ha[ve] prevented [him] from filing any grievance against the Ohio Adult Parole Authority or the Bureau of Sentence Computation." (ECF Doc. 13, PageID#193-94). Construing Bailey's assertions liberally, he appears to contend that there is essentially no administrative remedy for the Bureau of Sentence Computation's computation of his sentence. Assuming that there were no administrative remedies available to Bailey, he nonetheless had other available remedies to pursue, such as a writ of mandamus requesting that the court compel the Bureau of Sentence Computation to recalculate his sentence. Here, Bailey filed two unsuccessful habeas actions where he presented the same claims asserted in his Petition rather than filing a writ of mandamus. Because Bailey did not properly exhaust his claim, a federal court cannot grant relief under 28 U.S.C. § 2254(b)(2).

### 2. *Cognizability and Merits*

Even if Bailey's Ground One claim was not time-barred or unexhausted, it is still non-cognizable and meritless.[6] Bailey asserts that the ODRC improperly applied R.C. § 2929.41 in calculating his sentence. (ECF Doc. 3, PageID#22). He contends that his 1985 burglary conviction should have run concurrently with his 1990 conviction for having weapons under disability. (*Id.*). Bailey's assertion that the ODRC erred in its calculation of his maximum aggregated sentence is not a cognizable issue for federal habeas corpus because it is a *state law* sentencing issue. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Indeed, the Sixth Circuit has held that "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*¸76 Fed. App'x 52, 53 (6th Cir. 2003); *see also Kipen v. Renico*, 65 Fed. App'x 958, 959 (6th Cir. 2003) ("Incarcerating a prisoner after the expiration of his maximum sentence may result in a constitutional violation. However, the actual computation of [petitioner's] prison term involves a matter of state law that is not cognizable under [§2254]."); *Cool v. Miller*, No. 5:13-cv-1139, 2014 WL 11321655, at *3 (N.D. Ohio June 30, 2014) (same).

In his Traverse, Bailey attempts to expand the nature of his claim by asserting that R.C. § 2929.41 was improperly applied because he is a class action member of the Sixth Circuit *Kellogg v. Shoemaker* consent decree. (ECF Doc. 13, PageID#195). Pursuant to this consent decree, Bailey contends that he was entitled to a meaningful hearing as described by *Morrissey v. Brewer*.[7] (*Id.*). Yet, this was not how Bailey framed his Ground One claim in his Petition. (ECF Doc. 3,

---

[6] Assuming that there is a state court remedy available, this Court may ignore the exhaustion requirement altogether and deny a habeas petition on the merits if none of the petitioner's claim have any merit. *Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009) (citing *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000)).
[7] *Morrisey v. Brewer*, 408 U.S. 471 (1973).

16

PageID#22). While Bailey certainly asserts that the APA improperly applied R.C. § 2929.41, his supporting facts only assert that his 1985 sentence should have run consecutively, rather than concurrently, with his 1990 sentence. (*Id.*). Indeed, he fails to mention the *Kellogg v. Shoemaker* consent decree in his Petition at all. (*See id.*). "New issues may not be raised in the Traverse." *McClendon v. Wainwright*, No. 1:17-cv-589, 2019 WL 1558739 (N.D. Ohio Apr. 10, 2019) (citing *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (citation omitted) ("[A] court cannot consider new issues raised in a traverse or reply to the State's answer."). Thus, this Report and Recommendation will not address this issue.

While incarcerating a prisoner after the expiration of his maximum sentence may be a constitutional violation, Bailey's assertion regarding the expiration of his maximum sentence appears to be based on his own interpretation of Ohio administrative and sentencing law, which is an issue squarely in the province of the State and not cognizable on habeas review.[8] To the extent that his assertion rises to a constitutional violation, Bailey's Ground One claim lacks merit. As stated previously, incarcerating a prisoner after the expiration of his maximum sentence may result in a constitutional violation. *See Kipen v. Renico*, 65 Fed. App'x at 959. Yet, according to the Bureau of Sentence Computation's sentencing memorandum provided by Respondent, Bailey's new maximum sentence expiration date is June 30, 2031. (ECF Doc. 12-1, PageID#85). Thus, the record reflects that his custodial sentence has not expired. Accordingly, I recommend that Bailey's Ground One claim should be dismissed as non-cognizable and meritless.

---

[8] Bailey attempts to raise an Eighth Amendment due process claim regarding the alleged expiration of his sentence as a sub-claim for Ground Two in his Traverse. (ECF Doc. 13, PageID#197). To assist with logical flow, the analysis of this claim is included in the discussion of his Ground One claim.

### C.  Grounds Two and Three

Bailey's Ground Two and Three claims should be dismissed because they lack merit. Because the facts and rationale of Bailey's Ground Two and Three claims overlap, the analysis of these claims will be combined. Bailey's Ground Two claim asserts that he never violated his condition of release or supervision because "he never signed any document stating any agreement." (ECF Doc. 3, PageID#24). After his August 2008 arrest, Bailey claims that he was never declared a parole violator or afforded a preliminary hearing to determine whether there was probable cause to believe he violated his parole. (*Id.*). In his Traverse, he asserts that the ODRC has added 4,386 days of lost time to his maximum sentence. (ECF Doc. 13, PageID#197). Citing to R.C. § 2967.115(C)(1), he notes that the time between the date on which a person who is a parolee is declared to be a violator or violator at large, and the date on which the person is returned to custody in the state under the immediate control of the APA, shall not be counted as time served under the sentence imposed on that person or as a part of the term of post-release control. (*Id.* at 97-98). He contends that he was not declared a "parole violator at large" by the APA for purposes of invoking R.C. § 2967.15. (*Id.* at 98). Accordingly, he asserts that his time in federal prison should be counted towards his state sentence. (*Id.*).

Bailey's Ground Three heading is vague and only contains the words "revocation hearing" and "due process." (ECF Doc. 3, PageID#25). Nonetheless, based on his Traverse and his supporting facts, Bailey's Ground Three claim is liberally construed to be asserting that he was not afforded a reasonably prompt informal inquiry to determine if there were reasonable grounds to believe that he violated a parole condition. (ECF Doc. 13, PageID#198). He argues that he was "stayed in a state holding facility for more than a year, with no attempts to return him to the proper institution and there was no warrant issued." (ECF Doc. 3, PageID#25). Further, citing to R.C. §

2967.15, he contends that he "was available for a preliminary or mitigation hearing for more than one year." (*Id.*).

Bailey's Ground Two and Ground Three claims lack merit because he was afforded constitutional due process as required under *Morrissey v. Brewer*[9] when his parole was revoked in 2015. The Supreme Court has held that there is no constitutional right for a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979). Moreover, Ohio has not created a constitutionally protected liberty interest in a prisoner's release on parole. *See Jago v. Curen*, 454 U.S. 14 (1981) (holding that the Ohio Adult Parole Authority's rescission of a decision to grant parole on or after a specified date did not constitute a deprivation of "liberty" within the meaning of the Due Process Clause); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Authority*, 929 F.2d 233 (6th Cir. 1991) (holding that Ohio law does not entitle inmates to parole before the expiration of a valid sentence of imprisonment and, consequently, does not create a liberty interest in parole). However, the Supreme Court has set forth minimum due process requirements for the revocation of parole. *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972). At a minimum, a parolee facing revocation must receive:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

---

[9] *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972).

*Id.* A final revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody." *Morrissey*, 408 U.S. at 488.

A liberal reading of Bailey's Ground Two claim is that he believes he was deprived of a preliminary hearing. This claim should be rejected. Although a preliminary hearing is required to determine if there is probable cause or reasonable grounds to believe the arrested parolee committed a parole violation, *see Morrissey*, 408 U.S. at 485-87, the Supreme Court has held that no preliminary hearing is required in cases, like here, where the parolee has been convicted of and incarcerated for a subsequent offense committed while on parole. *Moody v. Daggett*, 429 U.S. 78, 86 n.7 (1976); *see also Alford v. Shartle*, No. 4:08-cv-1963, 2008 U.S. Dist. LEXIS 125566, at *6-7 (N.D. Ohio Nov. 4, 2008). Similarly, in *Sneed v. Donahue*, 993 F.2d 1239 (6th Cir. 1993), the Sixth Circuit found that a parolee's incarceration for an offense committed while on parole established probable cause for a parole violation, and that, therefore, there was no need for a preliminary hearing. *Id.* at 1241. Thus, Bailey was only entitled to a final parole revocation hearing, not a preliminary hearing.

Regarding his parole revocation hearing claim in Ground Three, this claim should also be rejected because he did receive a parole revocation hearing that complied with the due process requirements of *Morrissey*. Although Bailey claims that he was held for over one year without a hearing, he offers no facts or law in support of this claim. (*See* ECF Doc. 3, PageID#25; ECF Doc. 13, PageID#198-99). In *Moody v. Daggett*, 429 U.S. 78, the Supreme Court held that the event that triggers the right to a prompt revocation hearing occurs when the parolee is "taken into custody as a parole violator by execution of the warrant." *Id.* at 89. Accordingly, Bailey's due process rights afforded under *Morrissey* would not have vested until he was placed in the State of Ohio's custody. *Id.*

Here, Bailey had been incarcerated because of his 1985, 1990, and 1996 convictions for burglary, theft, having weapons under disability, and for numerous counts of receiving stolen property. While on parole on three separate occasions, he reoffended shortly after each release. On May 19, 2003, he was released on parole, but was classified as a parole violator in custody after his arrest for armed bank robbery less than three months after his release. (ECF Doc. 12-1, PageID#89). While awaiting federal criminal proceedings, Bailey attempted to escape and was subsequently convicted of escape in Case No. 2004-CR-057. (*Id.* at 102). In his revocation documents, Bailey admitted that he violated Rule 1 of his Conditions of Supervision through his commission of bank robbery on August 1, 2003. (*Id.* at 97). From 2003 to 2015, Bailey was incarcerated in federal prison after his convictions for bank robbery and escape in Case Nos. 2003-CR-330 and 2004-CR-057. After serving his 12-year sentence for his federal convictions, Bailey was returned to the ODRC as a parole violator in custody on August 5, 2015. (*Id.* at 95). ODRC determined that Bailey should receive 4,386 days of lost time for the time he served in federal prison. (*Id*).

Because Bailey was in federal custody, his *Morrissey* rights for a parole violation hearing from the State of Ohio did not vest until August 5, 2015, the date he was available after serving his federal sentence. Under federal law, the State did not commit a due process violation by deferring the execution of its warrant until after Bailey served his federal sentence. *See Inmates' Councilmatic Voice v. Rogers*, 541 F.2d 633, 636 (6th Cir. 1976) (The "APA should not be required to travel outside of Ohio and conduct parole revocation hearings in a foreign jurisdiction every time a parolee commits a new crime in another State. This would impose real inconvenience and hardship on the Board as well as subject the State to considerable unnecessary expense.... In our opinion APA is not required to hold a final parole revocation hearing until a reasonable time

after it has obtained custody over the parolee by executing the detainer in Ohio and has returned him to the institution from which he was paroled."); *see also Davis v. Stine*, No. 05-CV-673-KKC, 2006 WL 1050069, at *3 (E.D. Ky. April 20, 2006) ("There is nothing impermissible in waiting until a parole or probation violator is released from [another jurisdiction's] custody before holding revocation proceedings."). The APA held Bailey's parole revocation hearing on September 16, 2015, six weeks after his return to the State of Ohio's custody. (*See* ECF Doc. 12-1, PageID#102). Bailey has not established either in his Petition or Traverse that a six-week delay is an unreasonable length of time for the occurrence of a parole violation hearing. (*See generally* ECF Docs. 3, 13). Nor has he pointed to any established Supreme Court precedent establishing that the facts in his case constitute an unconstitutional delay. (*See generally* ECF Docs. 3, 13).

The record reflects that, in accordance with *Morrissey* and Ohio Admin. Code 5120:1-1-17(E) and 5120:1-1-18, the APA gave Bailey written notice of his alleged parole violations, the hearing date, and his hearing rights, and that Bailey signed this notice. (ECF Doc. 12-1, PageID#96). Although Bailey now contends that he never violated the conditions of his release, he did admit to violating Rule 1 of his release conditions by committing the new crime of armed bank robbery. (*Id.* at 97). Bailey received a hearing from the APA in front of a neutral and detached hearing body on September 16, 2015. (*Id.* at 101). At this hearing, Bailey was represented by counsel and had the opportunity to be heard in person, to present witnesses, to present documentary evidence, and to confront and cross-examine adversary witnesses. (*Id.* at 100-02). The APA provided its findings in a hearing summary report that discussed the evidence the APA relied upon and its rationale for revoking Bailey's parole. (*Id.*). Thus, the APA complied with the *Morrissey* due process requirements, and his due process rights were satisfied. Bailey failed to offer any contrary facts that would allow a different conclusion to be reached.

Bailey's remaining option would be to establish that the APA's decision was arbitrary and capricious. In Ohio, when a person is paroled and released from confinement before the end of his sentence, that person remains in the custody of the state until the sentence expires or the APA grants final release. R.C. § 2967.02(C); R.C. § 2967.02(D); R.C. § 2967.15(A); R.C. § 2967.16(C)(1). The APA has the authority to revoke parole if a parolee violates his release conditions. Ohio Admin. Code 5120:1-1-17(A),(B). A parole board's decision should not be overturned unless the action is arbitrary and capricious, or unless as a matter of law there has been no violation of parole. *Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir. 1993). Bailey has not established in either his Petition or Traverse that the APA's ruling met either of these exceptions. (*See generally* ECF Docs. 3, 13). While serving parole for his Ohio convictions, he was prosecuted for a new federal crime of bank robbery. (ECF Doc. 12-1, PageID#90). He admitted his violation of Rule 1 of his release conditions, the commission of a new crime, to the APA. (*Id.* at 97). Thus, Bailey has failed to establish that his rights were violated. Accordingly, I recommend that this Court dismiss Bailey's Ground Two and Ground Three claims because they lack merit.

## VI.     RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for

23

establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Bailey's Ground One, Ground Two, and Ground Three claims are barred by the statute of limitations, unexhausted, non-cognizable, and/or meritless. Because jurists of reasons would not find any of these conclusions to be debatable, I RECOMMEND that this Court decline to issue a Certificate of Appealability in this case.

## VII.     RECOMMENDATION

Because Bailey has presented claims that are barred by the statute of limitations, unexhausted, non-cognizable, and/or meritless, I RECOMMEND that the Court DISMISS and/or DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254 and not grant a Certificate of Appealability. I also RECOMMEND that Tim McConahay, the Warden of the Mansfield Correctional Institution—where Bailey is currently housed—should be substituted for Ronald Erdos as the Respondent in this case.

## VIII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections

must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: December 1, 2022

     *s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge